Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50101 | **DATE** | 3/18/2002 |
| **CASE TITLE** | HARPER vs. ROHR MANUFACTURING CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's motion to strike is denied and defendant's motion for summary judgment is hereby granted as to counts II and III. Counts II and III are hereby dismissed with prejudice. Count I is hereby remanded to the state circuit court from which it was removed.

(11) ■ [For further detail see order attached to the original minute order.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

JUDITH E. HARPER,               )
                                )
        Plaintiff,               )
                                )
    v.                           )   No. 00 C 50101
                                )
ROHR MANUFACTURING CO.           )
                                )
        Defendant.               )

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

On March 2, 2000, plaintiff, Judith Harper, filed a three-count complaint in state court against defendant, Rohr Manufacturing Co. Count I alleges retaliatory discharge in violation of state law. Count II asserts sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Count III alleges retaliation in violation of Title VII for complaining about sexual harassment. Defendant properly removed the action to this court pursuant to 28 U.S.C. § 1441 based on federal question jurisdiction over the Title VII claims. 42 U.S.C. § 2000e-5(f)(3). The court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367. Defendant's motion for summary judgment, and plaintiff's motion to strike certain portions of defendant's LR 56.1(a)(3) statement, exhibits, and affidavits are before the court.

## II. BACKGROUND

Plaintiff began working for defendant in 1994. (LR 56.1(a) ¶ 7) Mark Kaskavage was her immediate supervisor until early 1995. (Id. ¶ 8) Her husband, Rick Harper, was her supervisor thereafter. (Id. ¶ 9) According to plaintiff's deposition testimony, in 1995 an unidentified male co-worker told plaintiff he wanted her to be his "Mamasita." (Id. ¶ 28(d)) In 1996, there was a picture of a vagina hanging in the box-line department as well as pictures of naked women in paint booths. (Id. ¶ 28(e)) Also, in 1996, a male co-worker showed plaintiff a greeting card with a picture of an obese female in lingerie and asked her if she had given it to him. (Id. ¶ 28(g)) In 1996 or 1997 a tampon was painted red and placed on the box-line. (Id. ¶ 28(h)) In mid-1997, a male co-worker told another male co-worker in plaintiff's presence something in Spanish which plaintiff believed was "a dollar for your pussy." (Id. ¶ 28(i))

In November or December 1997, an unidentified male co-worker asked plaintiff to leave her husband and marry him and told another co-worker in reference to plaintiff "that's the woman I want right there." (Id. ¶ 28j; Pl. Exh. A, J. Harper. Dep., pp. 83-84) Plaintiff complained to her husband/supervisor about the 1997 incidents. (Pl. Exh. A, J. Harper Dep. p. 85) She had complained about earlier incidents of perceived co-worker sexual harassment to Mark Kaskavage at the time he was her supervisor

2

but he did not do anything about it and laughed. (Id., pp. 86-87) She complained to her husband/supervisor in 1996 or 1997 about the pictures of naked women, (id., pp. 94-96) and about the painted tampon incident. (Id., p. 97)

Plaintiff was not touched in a sexual manner (id., p. 95), but she had a certain male co-worker attempt to restrain her on two occasions when Mark Kaskavage was her supervisor. (Id., pp. 87-88) In 1996 or 1997, plaintiff was told by a female co-worker, Tammy, that a male employee had touched Tammy's butt. (Id., pp. 95-96) Plaintiff heard a supervisor tell Tammy "she deserved what she got." (Id.)

Rick Harper testified in his deposition, that he observed pornographic material in toolboxes and other locations in the shop. (Pl. Exh. B, R. Harper. Dep., pp. 27-29) The Spanish people would ask all the girls if they would marry them or go on dates. (Id., pp. 26-27) He advised management in 1997 but it did not stop this activity. (Id., pp. 32-39) He made complaints to management about pornography and the marriage proposals up until his termination. (Id., p. 52) The company president was aware of the pornographic pictures. (Id., p. 39)

In a meeting on December 15, 1997, plaintiff advised management she was going to call OSHA about air quality in the plant. (Pl. Exh. A, J. Harper Dep., p.52) A few days after this meeting the president told plaintiff it seemed like it was always

3

her making complaints, that he felt like she was the problem and that if she did not quit making complaints she would be terminated. (Id., p. 61) Plaintiff subsequently complained about her husband being humiliated by another employee. (Id., p. 66) In the latter part of 1997, plaintiff's husband stated the company should be shut down. (Pl. Exh. B, R. Harper Dep., p. 80) He said this because of the air quality. (Id.) Plaintiff and her husband were terminated on January 5, 1998, with no reason being given. (LR 56.1(b) ¶¶ 61, 65)

Plaintiff filed a complaint with the Illinois Department of Human Rights and the EEOC on June 8, 1998 (Compl., Exh. A) and received a right to sue letter on December 17, 1999. (Id., Exh. B)

### III. ANALYSIS

#### A. Motion to Strike

Plaintiff has moved to strike certain portions of defendant's LR 56.1(a) statement of facts, exhibits, and affidavits. The court will not strike these items but has disregarded them in ruling on this motion for summary judgment, in view of the court's duty to view the facts most favorably to the plaintiff. See Hall v. Bodine Elec. Co., 276 F.3d 345, 352 (7th Cir. 2002).

#### B. Title VII Sexual Harassment

Summary judgment is proper when "the pleadings, depositions,

4

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See Hall, 276 F.3d at 352. All facts are construed, and all reasonable inferences drawn, in favor of the nonmoving party. See Hall, 276 F.3d at 352.

In order to bring a Title VII claim, a person must first file an EEOC charge within 300 days of the alleged discriminatory conduct. See id. Failure to do so bars a lawsuit on that conduct. See id. Plaintiff filed her charge on June 8, 1998, so any discriminatory acts occurring before August 12, 1997, are outside the limitations period covered by the charge unless the continuing violation doctrine applies. See id. at 353. The continuing violation doctrine allows a plaintiff to get relief for time-barred actions by linking them to acts occurring within the limitations period. See id. Plaintiff may not base her suit on conduct occurring outside the limitations period unless she could not reasonably have been expected to bring an action on that conduct within the limitations period for that conduct. See id.

Much of the conduct plaintiff complains of occurred in 1995 and 1996 and at undetermined times in 1997. She complained of these incidents at the time. Since she perceived a pattern of

inappropriate behavior at the time, it would not have been unreasonable for her to seek redress for these actions within the limitations period for that conduct. See Adkins v. Kelly-Springfield Tire Co., No. 97 C 50381, 2001 WL 219636, * 5 (N.D. Ill. Mar. 6, 2001) (Reinhard, J.) Plaintiff is not covered by the continuing violation doctrine and is limited to events occurring on or after August 12, 1997.

Whether a hostile work environment exists is a question of law. See Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 345 (7th Cir.), cert. denied, 528 U.S. 874 (1999). In order to be actionable, plaintiff must show the sexual harassment is so severe or pervasive as to alter the conditions of employment and create an abusive working environment. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001) (per curiam). The court must look at all the circumstances, including the frequency of the discriminatory conduct, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. See id. at 270-71. Plaintiff must show that the workplace was both subjectively and objectively hostile. Dyson v. City of Chicago, No. 01-20925, 2002 WL 272774, at *4 (7th Cir. Feb. 27, 2002)

To establish a prima facie case of hostile work environment based on sexual harassment plaintiff must demonstrate "(1) she

6

was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on [the individual's] sex; (3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (4) there is a basis for employer liability." Hall, 276 F.3d at 354-55 (internal quotations omitted).

The incidents which the evidence shows occurred within the limitations period are the co-worker asking plaintiff to leave her husband and marry him, the same co-worker telling another that plaintiff was "the woman I want right there," the general occurrence of women being asked to marry or date, and the existence of pornographic pictures in the plant. These events, while doubtlessly offensive to plaintiff, do not rise to the level of a hostile work environment.

The incidents reported are not pervasive or severe enough to have altered the conditions of plaintiff's employment or created an abusive working environment. See Breeden, 532 U.S. at 270. The marriage proposals and the "woman I want" comment directed at plaintiff, and the general occurrence of proposals and asking for dates, are not explicitly of a sexual nature and therefore do

7

not meet the first prong set out in Hall for establishing a prima facie case. See Hall, 276 F.3d at 354-55. While pornographic pictures are of a sexual nature, there is no evidence that the pictures, or any or all of the alleged conduct, had the effect of unreasonably interfering with the plaintiff's work performance or seriously affected her psychological well-being. See id. Without this evidence, plaintiff has not met the third prong for establishing a prima facie case, see id., and defendant is entitled to summary judgment on Count II.

## C. **Title VII Retaliation**

Title VII prohibits retaliation against an employee who has opposed any practice made unlawful by Title VII. See Dyson, 2002 WL 272774, at *4. Plaintiff may prove retaliation by either direct evidence (evidence that does not require resort to inferences from circumstantial evidence) that she engaged in protected activity and as a result suffered an adverse employment action, see Stone v. City of Indianapolis Pub. Utils. Div., No. 01-3210, 2002 WL 234239, at *2 (7th Cir. Feb. 19, 2002) or by the indirect method of proof. See Dyson, 2002 WL 272774, at *6. Plaintiff has not presented direct evidence that she was fired because of protected activity and must therefore proceed under the indirect method.

To establish a prima facie case under the indirect method, plaintiff must show "(1) she engaged in statutorily protected

8

activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." Id. at *7. Failure to satisfy any element of the prima facie case is fatal to a Title VII retaliation claim. Id.

Plaintiff has not presented evidence that she engaged in activity protected by Title VII at any time proximate to her termination. Plaintiff's LR 56.1(b) statement of facts does not specify any time in the period leading to her termination that she complained of sexual harassment. Instead, it shows that the matters she was complaining to management about at that time were air quality in the plant (LR 56.1(b) ¶¶ 70, 71, 73), safety concerns (id. ¶ 74), and that she was going to contact OSHA. (Id. ¶ 79)[1] These are not matters within the scope of Title VII. See 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination based on race, color, religion, sex or national origin) Defendant is entitled to summary judgment on the issue of Title VII retaliation.

---

[1] Plaintiff argues in her brief that she made sexual harassment complaints as late as December 15, 1997 (Pl. Resp., p. 12), but the record she submitted does not show sexual harassment was discussed at that time.

9

D. **State Law Retaliatory Discharge**

Count I of plaintiff's complaint is a state law claim for retaliatory discharge based on her complaints of air quality and safety problems. Since the court has disposed of all the federal claims, "the usual and preferred course is to remand the state claims to the state court," Payne v. Churchich, 161 F.3d 1030, 1043 (7th Cir. 1998), cert. denied, 527 U.S. 1004 (1999), and therefore, the court declines to exercise supplemental jurisdiction over this claim. Accordingly, Count I is remanded to state court.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion to strike is denied and defendant's motion for summary judgment is hereby granted as to counts II and III. Counts II and III are hereby dismissed with prejudice. Count I is hereby remanded to the state circuit court from which it was removed.

E N T E R:

*/s/ Philip G. Reinhard*
PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 18, 2002

10

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

Judith E. Harper

v.

Rohr Manufacturing Co.

**JUDGMENT IN A CIVIL CASE**

Case Number: 00 C 50101

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that plaintiff's motion to strike is denied and defendant's motion for summary judgment is hereby granted as to counts II and III. Counts II and III are hereby dismissed with prejudice. Count I is hereby remanded to the state circuit court from which it was removed.

FILED-WD
02 MAR 18 PM 2: 52
CLERK
U.S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Date: 3/18/2002

Susan M. Wessman, Deputy Clerk